Smith, P. J.
—The complaint contains two counts; one alleges the sale and delivery, by the plaintiff to the "defendant, of certain machinery, at the agreed price of $3,500, to be paid by the defendant; the other alleges the sale and delivery of the like property, and that it was of the value of $3,500, for which sum defendant is indebted to plaintiff. The defense set up is a denial and payment.
At the trial the plaintiff gave evidence tending to show a sale and delivery by the plaintiff to the defendant, of the property described in the complaint, at the agreed price of $3,500 to be paid by the defendant in real estate of that value. It appeared in evidence that the plaintiff had received from the defendant, on account of such purchase, a deed, with the usual covenants of warranty, of certain real estate, which the evidence tended to show was of the value of $700 or $800 only, and a piano-spread of the value of forty or fifty dollars.
The defendant’s counsel contends that it is shown by uncontroverted evidence that the transaction was a barter *91 of the machinery for the real estate conveyed and the piano spread, and that by the transfer of the latter to the plaintiff her claim was fully satisfied. The plaintiff was nonsuited at the circuit, and the defendant’s counsel attempts to sustain the non-suit on the grounds above-stated. If we correctly apprehend the testimony the non-suit was erroneous. John H. Dampf, the husband of the plaintiff, who appears to have acted as her agent in the transaction, testified:“ I sold that property to the defendant; it was delivered to him; he was to pay for it $3,500, in real estate at market value, and to furnish full covenant deeds.” Q. “That was an expression which you used?” A. “Yes, sir.” Q. “Did you say to him what you meant by full covenant deeds?” A. “Yes, sir.” Q. “What?” A. “I meant by full covenant deeds; I told him, that it is expressed in the deeds, the amount, and that I am guaranteed that that property is worth that much money.” The witness, also, testified that the first agreement, and the one which the witness made for his wife with the defendant, was that the defendant agreed to pay $1,000 in money and $2,500 in real estate; that soon afterwards the defendant said he could not raise the money, and offered the plaintiff, in person, the piano-spread, if she would sell $3,500 worth of real estate. To that, as the witness testified, the plaintiff replied: “You want to give me $3,500 worth in real estate, and give me full covenant deeds, so it would be of market value?” and he said, “Yes,” and the plaintiff said, “Mr. Greener, I will accept your offer.”
The witness further testified, that from three to five weeks after that conversation, and after the delivery of the machinery, the defendant, who lived at Elmira, sent to plaintiff, at Corning, a quit-claim deed of five city lots in Elmira, in which the consideration expressed was $1,500; that witness wrote on the deed “$3,500,” and returned it to defendant; and that some months afterwards the defendant sent up another deed of the same lots, which it appears contained the usual covenants of warranty. The defendant having discovered that there was an error in the description contained in the second deed, sent up a third deed, with like covenants, to correct such error.
The plaintiff testified: “Mr. Greener said he couldn’t raise $1,000, in money, and he wanted me to take the amount of $3,500, in real estate, at market value, and said if I would take that he would give me the piano-spread; he said he had quite a good deal of real estate in Elmira, and that I had better take that, and I told him I would do so if at any time I could sell it and get my $3,500. I asked him for a full covenant deed that the $3,500 in real estate should be at market value.” * * * “ Nothing was said *92 as to what property in Elmira he should give me, nor how many lots. I said if he would do that he might have the property.”
She also testified that after the warranty deed was received, she took it to defendant, and told him that $3,500 was the amount he agreed to give her for the machinery, and that she wanted a full covenant deed as he had agreed, and he told her he would make it all right; that she then went with him to the office of Mr. Fassett, an attorney; that defendant and Fassett conversed apart, and Fassett then handed her back the warranty deed and told her to take it, and that Greener would make it all right with her, and said he would make the balance all right. She brought-the deed home she thinks. It was probably the corrected deed, though she didn’t recollect about that.
When Dampf, the husband, returned the quit-claim deed, he sent with it a letter, A letter, of which the following is a copy, was put in evidence by the defendant, and there was some evidence tending to show that it was the letter sent with the deed, but the testimony on that, point was conflicting:
“ October 27, 1876.
Mr. J. Greener—Dear Sir : If you send to me the warrantee deed of the five lots consideration, three thousand five hundred dollars, according understanding and bargain I made with you for my wife, and turn over the property in good shape, the house well painted outside and inside, you will save my wife a great deal of trouble and you will greatly oblige me. This must be done on or before the first day of November next. Also, please remit the amount due as per bill rendered. Mr. Greener, I hope you will comply at-once and let us not come to any legal action. You know I have sold you the goods for a warranty deed and one piano-cover; that also I could claim one thousand dollars besides. Wishing to have no more than I am entitled to, therefore-I expect an immediate settlement.
J. H. DAMPF.”
Another letter was put in evidence by defendant, written by J. H. Dampf to defendant, dated November 2, 1876, _ in which he wrote: “Let me assure you that I do not wish any legal proceedings, but must have what belongs to my wife, first, a warranty deed consideration, $3,500.” * * *" ‘ ‘lam sorry that you feel so bad about it, but I do not see that I ask anything wrong, and gave you ample time ta get me what belonged to my wife; believe me that I feel bad that you should attempt to shove off on me a claim deed.”
There was testimony tending to show that the plaintiff *93 took possession of the city lots conveyed by the deeds, made some improvements on them, and collected rents for their use, and that at a later date she offered to deed them back to defendant and pay him the rents she had collected, and at the same time demanded a return of the machinery, which was refused.
When the motion for a nonsuit was made at the close of the plaintiff’s evidence, the plaintiff’s counsel asked to go to the jury upon the questions whether it was agreed that the transfer of the five lots should be the consideration of the sale of the personal property; whether such transfer was accepted as full performance of defendant’s agreement; whether plaintiff agreed to satisfy her claim in consideration of such transfer, and whether she accepted such transfer as payment to any further amount than the value of the real estate. Each of which requests was denied, and plaintiff duly excepted.
We are unable to concur in the views that seem to have been taken of the case at the circuit. If the, foregoing-statement of the evidence is correct, as we think it is, there was evidence tending to show a sale of the machinery at the price of $3,500, to be paid in real estate of that value. Such evidence, instead of presenting a case at variance, was strictly within the averments of the complaint. We do not see that the letters written by the plaintiff’s agent contradicted the oral testimony given by him as to the terms of the transaction; if they do, it is by construction, and their true meaning is to be ascertained in the light of the oral testimony. The expression, “I have sold you the goods for a warranty deed and one piano cover,” is to- be taken in connection with the request at the outset of the letter fora “warranty deed of the five lots, consideration $3,500, according to understanding and bargain,” and the oral testimony as to what the bargain was. And if there was any question respecting its meaning, the question was for the jury.
The motion for a new trial should be granted, costs to abide event.
Barker and Haight, JJ., concur.